UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BROOKS MANUFACTURING COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DIS-TRAN WOOD PRODUCTS, LLC, et al.,<br><br>Defendants. | CASE NO. C11-0309JLR<br><br>ORDER ON MOTION TO DISMISS AND MOTION FOR STAY |

## I. INTRODUCTION

This matter comes before the court on Defendants Dis-Tran Wood Products, LLC, Dis-Tran WP Holdings, LLC, and Columbia Vista Dis-Tran's (collectively, "Dis-Tran") motion to dismiss Plaintiff Brooks Manufacturing Company's ("Brooks") second amended complaint for lack of subject matter jurisdiction (Dkt. # 46), and motion for stay pending resolution of the motion to dismiss (Dkt. # 47). Having considered the briefing of the parties, all related filings, and the relevant law, and neither party having requested

oral argument, the court GRANTS Dis-Tran's motion to dismiss (Dkt. # 46). In light of this decision, the court DENIES Dis-Tran's motion for stay as MOOT (Dkt. # 47).

## II. BACKGROUND

Brooks is a family owned business that is recognized as an industry leader in the sale and distribution of crossarms, which are wooden bars that are attached to utility poles and used to support power lines. (2d Am. Compl. (Dkt. # 45) ¶¶ 2-3.) Brooks is the owner, by assignment, of United States Patent No. 7,007,438 B1 ("the '438 patent"), titled "Crossarm Systems and Methods." (*Id.* ¶¶ 13-14.) The '438 patent sets forth a method for supporting power lines from a vertical utility pole using Brooks's Extenda-Life® crossarms. (2d Am. Compl. Ex. A ('438 Patent).) The '438 patent claims five methods, only the first of which is an independent claim. (*Id.*)

Dis-Tran also manufactures and distributes crossarms, including the "Dura-Arm" crossarm. (2d Am. Compl. Ex. C (Dis-Tran Website).) The Dura-Arm is supplied with end plates that are engineered to reduce end splits on crossarms and provide a longer service life. (*See* 2d Am. Compl. Ex. B (Dura-Arm Advertisement).)

On February 22, 2011, Brooks filed its original complaint against Dis-Tran alleging that by making, selling, and offering for sale the Dura-Arm crossarms, Dis-Tran is liable for infringement of the '438 patent under theories of contributory infringement and infringement by inducement. (Compl. (Dkt. # 1) ¶¶ 16-17.) Dis-Tran moved to dismiss Brooks's complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. # 16), and Brooks responded by filing a motion for leave to file a first amended complaint that contained additional factual allegations (Dkt. # 17).

On November 3, 2011, the court granted Brooks's motion for leave to file a first amended complaint, and denied Dis-Tran's motion to dismiss as moot. (Order (Dkt. # 33).) Brooks, however, did not file its proposed first amended complaint. Rather, on December 20, 2011, the parties filed a stipulated motion for leave for Brooks to file a second amended complaint (Dkt. # 40). The court granted the stipulated motion (Dkt. # 41), and on December 28, 2011, Brooks filed its second amended complaint (2d Am. Compl.).

In its second amended complaint, Brooks abandons all claims for infringement and instead seeks a declaratory judgment that the '438 patent is valid. (*See generally* 2d Am. Compl.) Brooks alleges that in 2007 or 2008, its representatives met with Dis-Tran's representatives, who acknowledged the '438 patent and conceded that their marketing and sale of crossarms with nail endplates would necessarily infringe the '438 patent. (*Id.* ¶¶ 15-16.) According to Brooks, Dis-Tran requested a license to allow it to sell cross arms with endplates that would allow the purchaser of Dis-Tran's crossarms to practice the methods claimed in the '438 patent. (*Id.* ¶ 17.) Brooks further alleges that it declined to issue Dis-Tran a license and that, as a result, Dis-Tran did not go forward with its plan of selling wooden crossarms with nail endplates. (*Id.*)

Nevertheless, Brooks alleges, Dis-Tran eventually decided to make, sell, and offer for sale their Dura-Arm crossarm. (*Id.* ¶ 18; *see also* 2d Am. Compl. Exs. B, C.) Brooks alleges that the Dura-Arm crossarms "necessarily and exclusively are used to support power lines from a vertical pole in a manner that infringes the methods claimed in the '438 patent." (2d Am. Compl. ¶ 19.) Brooks also alleges that in making, offering for

sale, and selling the Dura-Arm crossarm, Dis-Tran was complying with written specifications that require the crossarm seller to perform certain steps of the methods claimed in the '438 patent, and that Dis-Tran knew that its customers would infringe the '438 patent by performing the remaining steps of each method and controlling the performance of all steps of the claimed methods. (*Id.* ¶ 20.)

Brooks alleges that it contacted Dis-Tran's in-house counsel to object to Dis-Tran's marketing and sale of their Dura-Arm crossarms on the ground that the end user necessarily would practice all steps of the claimed methods in the '438 patent. (*Id.* ¶ 21.) According to Brooks, Dis-Tran's in-house counsel responded that the company was no longer concerned about infringing the '438 patent because counsel had located prior art that rendered the '438 patent invalid. (*Id.*)

Brooks alleges that Dis-Tran has sold Dura-Arm crossarms to distributors, who have re-sold them to end users. (*Id.* ¶ 24.) However, Brooks alleges, nearly all of the Dura-Arm crossarms have been returned to Dis-Tran because the end users did not want to use the crossarms to support power lines from a vertical pole for fear of infringing the '438 patent. (*Id.* ¶ 25.) Thus, Brooks alleges that at this point there is not yet sufficient evidence to support Brooks's claims that Dis-Tran has infringed the '438 patent. (*Id.* ¶ 26.)

Moreover, Brooks alleges that as a result of Dis-Tran's assertions that the '438 patent is invalid, it has "an objectively reasonable apprehension" that Dis-Tran will seek a judgment of invalidity and/or unenforceability of the '438 patent. (*Id.* ¶ 30.) Brooks alleges that uncertainty regarding the validity of the '438 patent has harmed Brooks by

injuring the value of its intellectual property.  (*Id.* ¶ 33.)  As a result, it alleges that an actual controversy exists between the parties regarding the validity of the '438 patent and whether it meets the requirements for patentability set forth in 35 U.S.C. § 103.  (*Id.* ¶ 34.)

Dis-Tran now moves to dismiss Brooks's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Mot. (Dkt. # 46).)  Dis-Tran argues that this court lacks subject matter jurisdiction over Brooks's declaratory judgment claim because there is no actual case or controversy.  (*Id.* at 1.)  Brooks opposes the motion, arguing that the court has jurisdiction to resolve Dis-Tran's invalidity arguments because infringement of the '438 patent is threatened.  (Resp. (Dkt. # 52) at 2.)  The motion is fully briefed and ripe for the court's consideration.

### III. ANALYSIS

**A. Rule 12(b)(1) Legal Standard**

When considering a motion to dismiss pursuant to Rule 12(b), the court must accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party.  *Carson Harbor Village, Ltd. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004).  Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint to declarations or other evidence in the record.  *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  In other words, "when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as

affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). The burden of establishing subject matter jurisdiction rests upon the party asserting jurisdiction—here, Brooks. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

**B. Subject Matter Jurisdiction**

The Declaratory Judgment Act provides, in relevant part, that "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" in the Declaratory Judgment Act refers to the types of cases and controversies that are justiciable under Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007). Prior to 2007, the Federal Circuit required a "reasonable apprehension of imminent suit" for declaratory judgment standing. *Arris Group, Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011). In *MedImmune*, the Supreme Court rejected this test and set forth a new standard. *Id.*

Under *MedImmune*, an actual controversy exists within the meaning of the Declaratory Judgment Act when the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). Further, the dispute must be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of

facts." *Id.* (internal quotation marks omitted). The basic question is each case is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). It is not necessary that there be a threat of imminent litigation for an actual controversy to exist, *id.* at 132 n.11, however an actual controversy must have existed at the time the claim for declaratory relief was filed, *Arris Group*, 639 F.3d at 1374. Furthermore, even where the Article III requirement of an actual controversy is satisfied, "the district court's exercise of its declaratory judgment authority is discretionary." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 883 (Fed. Cir. 2008).

Like in *MedImmune*, declaratory judgment plaintiffs in the patent context generally are potential or alleged infringers seeking a declaration that a patent is invalid or not infringed or both. *See Lang v. Pac. Marine & Supply Co., Ltd.*, 895 F.2d 761, 763 (Fed. Cir. 1990). In rarer circumstances, the Federal Circuit has allowed patentees to seek a declaration of future infringement.[1] *Id.* (collecting cases). In its motion to

---

[1] Prior to the Supreme Court's ruling in *MedImmune*, the Federal Circuit articulated a two-part test to satisfy the "case or controversy" requirement in a declaratory judgment suit by a patentee against an alleged future infringer: (1) "the defendant must be engaged in an activity directed toward making, selling, or using subject to an infringement charge under 35 U.S.C. § 271(a) (1982), or be making meaningful preparation for such activity"; and (2) "acts of the defendant must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming." *Lang*, 895 F.2d at 764; *see also Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1369 (Fed. Cir. 2004). The parites dispute whether the *Lang* test is applicable here. (Mot. at 6-7; Resp. at 8-9.) Based on the court's ruling below, it need not reach this issue. In any event, the

dismiss, Dis-Tran's primary argument is that it has found no case in which a court has exercised jurisdiction where the declaratory judgment plaintiff is the patentee whose sole claim seeks a declaratory judgment that the patent is valid. (Mot. at 5.) Brooks has not rebutted this assertion by directing the court to any procedurally analogous case. (*See generally* Resp.) Rather, Brooks contends that this court has jurisdiction over its validity claim because it satisfies the standards set forth in *MedImmune*.[2] (*Id.* at 3, 8-9.)

In examining how courts have applied *MedImmune*, the court has reviewed cases where plaintiffs have sought a declaration of invalidity, noninfringement, or future infringement. Like Dis-Tran (and presumably Brooks), the court has uncovered no case in which a patentee seeks a declaration of validity. Indeed, Brooks's patent is presumed valid. 35 U.S.C. § 282; *see also Boston Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361 (Fed. Cir. 2011). Therefore, Brooks essentially seeks a declaration as to the

---

Federal Circuit has yet to revisit the viability of the *Lang* test in light of *MedImmune*, and some district courts have concluded that it is no longer good law, at least in part. *See*, *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1012-13 (N.D. Ill. 2007) ("Given the close similarity between the two-part test articulated in *Lang* and the traditional reasonable-apprehension-of-suit test that has been abandoned after *MedImmune*, the court concludes that the *Lang* test likewise is no longer good law."); *Eisai Co., Ltd. v. Mut. Pharm. Co.*, No. 06-3613 (HAA), 2007 WL 4556958, at *17 (D.N.J. Dec. 20, 2007) (finding that "the second *Lang* prong is no longer good law" but concluding that the plaintiff could satisfy this prong by showing both "immediacy" and "reality" as set forth in *MedImmune*); *see also Boston Scientific Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648, 652 n.7 (D. Del. 2008) (noting that "[i]t is unclear whether the *Lang* test, minus the requirement that a 'reasonable apprehension of suit' results, remains applicable").

[2] Brooks also argues that the Supreme Court in *MedImmune* rejected Dis-Tran's argument that the court does not have subject matter jurisdiction to resolve invalidity arguments unless they are raised in a counterclaim or as a preemptive defense to a threatened infringement suit. (Resp. at 6.) Brooks reads too much into *MedImmune*, which was silent as to the question currently before the court, that is, whether the court has jurisdiction over a patentee's declaratory judgment action for validity (not invalidity).

status quo. Although the test for subject matter jurisdiction under *MedImmune* may be met here, the court finds that Brooks is seeking an unprecedented ruling that the court has jurisdiction over a declaratory judgment of validity. Given the dearth of analogous case law to guide it, the court exercises its discretion to decline to issue a declaratory ruling in this context. *See Sierra Applied Sciences, Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1380-81 (Fed. Cir. 2004) (remanding to district court for a determination of whether it should dismiss the declaratory judgment action on discretionary grounds based on the "unusual circumstances" of the case).

"In deciding whether to entertain a declaratory judgment request, a court must determine whether resolving the case serves the objectives for which the Declaratory Judgment Act was created." *Cat Tech LLC*, 528 F.3d at 883. The Declaratory Judgment Act was intended "to prevent avoidable damages from being incurred by a person uncertain of his rights and threatened with damage by delayed adjudication." *Id.* at 878-79 (quoting *Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673 (Fed. Cir. 1991)); *see also MedImmune*, 549 U.S. at 134 (noting that the Declaratory Judgment Act protects plaintiffs from having to "destroy a large building, bet the farm, or . . . risk treble damages and the loss of 80 percent of its business before seeking a declaration of [their] actively contested legal rights . . ."). "[T]he exercise of discretion must be supported by a sound basis for refusing to adjudicate an actual controversy." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed. Cir. 2007).

Here, there is a sound basis for refusing to adjudicate Brooks's claim for validity. First, Brooks is not uncertain of its rights with respect to the '438 patent—the patent is

currently presumed to be valid, and Dis-Tran would have the burden of establishing invalidity. *See* 35 U.S.C. § 282; *Boston Scientific*, 647 F.3d at 1361. Although Dis-Tran may have asserted its belief that the '438 patent is invalid in pre-litigation conversations with Brooks and in response to Brooks's original complaint alleging patent infringement, Dis-Tran has never brought a claim, counterclaim, or other action against Brooks seeking to invalidate the patent. If anything, Dis-Tran—not Brooks—should be uncertain of its rights, as it has indemnified the supplier that was the primary purchaser of the Dura-Arm crossarms (Angelis Decl. (Dkt. # 49) Ex. A (Indemnification Agreement)). *See Arris Group*, 639 F.3d at 1375 ("[W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's [goods], the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement.").

   Second, there is no evidence of threatened damage to Brooks if the court declines to adjudicate its claim for a declaration of validity. Brooks alleges that Dis-Tran's "conduct has directly injured the value of Brooks Manufacturing's intellectual property," (2d Am. Compl. ¶ 31), however it pleads no facts in support of this conclusory allegation. In fact, Brooks alleges that nearly all of the Dura-Arm crossarms that end users purchased have been returned to Dis-Tran because the end users feared that using the crossarms to support power lines from a vertical pole would infringe the '438 patent. (*Id.* ¶ 25.) A reasonable inference based on this allegation is that end users presume that the '438 patent is valid. In sum, Brooks currently benefits from the presumption that the

'438 patent is valid, and there is no evidence that it would suffer harm if the court declines to entertain a declaratory action seeking a declaration of the validity of the patent.

Accordingly, the court concludes that Brooks's declaratory claim for validity of the '438 patent does not serve the objectives of the Declaratory Judgment Act. Further, as noted above, Brooks seeks an unprecedented ruling from the court. In considering all of the circumstances of the case, the court finds that there is substantial justification to grant Dis-Tran's motion to dismiss Brooks's second amended complaint.[3] The court, moreover, deems it appropriate to dismiss Brooks's claim for a declaratory judgment of validity with prejudice. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). The court previously granted Brooks leave to file a first amended complaint alleging infringement, but rather than doing so, Brooks filed a second amended complaint in which it abandoned all claims of infringement and instead alleged an entirely new claim for a declaratory judgment of validity. Based on the discussion above, the court finds that amendment of this particular claim would be futile. *See id.* The court makes no ruling on the issues of validity, invalidity, or infringement of the '438 patent.

\\

\\

\\

---

[3] The court has carefully considered the additional arguments set forth by the parties in their briefing and concludes that they do not warrant discussion in light of the court's stated reasons for granting Dis-Tran's motion.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Dis-Tran's motion to dismiss (Dkt. # 46), and DENIES Dis-Tran's motion for stay as MOOT (Dkt. # 47). The court DISMISSES Brooks's second amended complaint alleging a claim for declaratory judgment of patent validity WITH PREJUDICE.

Dated this 30th day of March, 2012.

JAMES L. ROBART
United States District Judge